DIXON, Justice.
Defendant was convicted of driving while intoxicated, a violation of R.S. 14:98. He applied to this court for writs of certiorari, raising the question whether the result of the Photo-Electric Intoximeter (PEI) tests given defendant was admissible to trigger the presumption of intoxication provided by R.S. 32:662[1]. We hold that it was not.
*673 While operating his automobile along Louisiana Highway 64, defendant was stopped by Trooper William Spencer. The trooper checked defendant’s driver’s license and allowed him to proceed. As defendant drove away, Trooper Spencer noticed he was crossing the mid-line of the highway and was “straddling” the center line of the road. The trooper then stopped defendant a second time and administered a field test for sobriety (requiring defendant to touch his nose with his finger), which defendant failed. Trooper Spencer noticed an odor of alcohol about defendant and placed him under arrest. The trooper issued defendant his Miranda warnings and his rights concerning the PEI test. Defendant was taken to the Denham Springs police department and given the PEI test.
At trial, Trooper Spencer testified he was trained at the forty hour course on breath analysis given by the Division of State Police. His certificate from this course as well as a certificate from the Louisiana Health and Human Resources Administration, Division of Health, is included in the record before us. Trooper Spencer further testified that the result of defendant’s PEI test was .163 grams per cent. Defendant objected to this testimony on the grounds that there had been no showing of compliance with R.S. 32:663 as required by our decision in State v. Jones, 316 So.2d 100 (La.1975).
R.S. 32:663 provides:
“Chemical analyses of the person’s blood, urine, breath or other bodily substance, to be considered valid under the provisions of this Part, shall have been performed according to methods approved by the state department of health and by an individual possessing a valid permit issued by said department for this purpose. The state department of health is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the department.”
In State v. Jones, supra, the State cited two written instruments in support of its contention that the PEI test had properly been approved by the department of health. One of these instruments was a letter dated September 16, 1969 from George M. Hauser to the effect that the breath analysis techniques taught at the forty hour course given by the Division of State Police was “hereby approved by the Louisiana State Department of Health.” The second instrument was a December 19, 1974 pronouncement by the Louisiana Health and Human Resources Administration that the approved method was the PEI test manufactured by Intoximeter, Inc., St. Louis, Missouri (or any approved equivalent). *674 Since the results of these tests determine whether the presumption of R.S. 32:662 comes into play, we held that R.S. 32:663 required “much more” than the evidence cited by the State.
The evidence relied upon in the case before us is substantially the same evidence discussed above and in State v. Jones, supra.
The record reveals a letter dated February 20, 1975 from the same George M. Hauser addressed “to whom it may concern” and to the effect that the PEI test “has been approved for the determination of breath test for alcohol in accordance with R.S. 32:661-8, Act 273.” This letter provides no more than the letter in Jones.
The record also contains an instrument by the Division of Health dated December 19, 1974 and entitled “Rules and Regulations: Tests for Suspected Drunken Drivers.” This is the same instrument we referred to in Jones; it provides, among other things, that “the method approved for breath testing for alcohol is the PhotoElectric Intoximeter Test performed with the instrument manufactured by Intoxi-meter, Inc., St. Louis, Missouri or any equivalent machine which is approved by the Bureau of Laboratories, State Division of Health.”
For the reasons heretofore announced, we reiterate our holding in Jones:
“. . . the State may not avail itself of the presumptions available under La. R.S. 32:662 until the ‘state department of health’, that is, the Louisiana Health and Human Resources Administration, establishes and promulgates carefully detailed methods, procedures and techniques covering, but not limited to repair, maintenance, inspection, cleaning, chemical accuracy, certification, proof of adherence to which would reasonably assure that the right articulated in Junell, supra [La., 308 So.2d 780], would be recognized and implemented in the courts of law of this State.” State v. Jones, 316 So.2d 100, 105.
The trial judge heard the testimony of the arresting officer, but announced at the conclusion of the trial that . . . based on the results of the test which read .16g%, the Court must find the defendant guilty as charged.” There can be no question of “harmless error,” as argued by the State.
The conviction and sentence are reversed, and the case is remanded to the City Court of Denham Springs.
SUMMERS, J., dissents and assigns reasons.

. “A. The chemical test or tests as provided for by this Part shall be subject to the following rules and shall be administered as provided for hereafter:
“1. Upon the trial of any criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a *673 vehicle while under the influence of alcoholic beverages the amount of alcohol in the person’s blood at the time alleged as shown by chemical analysis of the person’s blood, urine, breath or other bodily substance shall give rise to the following presumptions:
“a. If there was at that time 0.05 per cent or less by weight of alcohol in the person’s blood, it shall be presumed that the person was not under the influence of alcoholic beverages.
“b. If there was- at that time in excess of 0.05 per cent but less than 0.10 per cent by weight of alcohol in the person’s blood, such fact shall not give rise to any presumption that the person was or was not under the infuence of alcoholic beverages, but such fact may be considered with other competent evidence in determining whether the person was under the influence of alcoholic beverages, “c. If there was at that time 0.10 per cent or more by weight of alcohol in the person’s blood, it shall be presumed that the person was under the influence of alcoholic beverages.
“B. Percent by weight of alcohol in the blood shall be based upon grams of alcohol per one hundred cubic centimeters of blood.
“C. The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of alcoholic beverages.
“This section has no application to a civil action or proceeding.”